UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD G. ROSS, | Case No. CV 15-01203-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Harold G. Ross ("Plaintiff") challenges the Commissioner's denial of his application for supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II. PROCEEDINGS BELOW

On January 17, 2012, Plaintiff protectively applied for SSI alleging disability beginning April 7, 2001. (Administrative Record ("AR") 147-55). His application was denied initially on August 22, 2012, and upon reconsideration on February 22, 2013. (AR 54-80.) On March 11, 2013, Plaintiff filed a written request for hearing, and a hearing was held on September 11, 2013. (AR 99, 22-53.) Represented by

counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 22-53.) On September 26, 2013, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] since the filing of his SSI application. (AR 18.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-4.) Plaintiff filed this action on June 19, 2015. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (AR 12.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: history of failed right knee total arthroplasty surgery; right knee arthrofibrosis and contracture; left knee patellofemoral syndrome; and degenerative disc disease of the lumbar spine. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform light work…. Specifically, the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; and he is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying, except he must not more than occasionally push and/or pull with the bilateral lower extremities. He can no more than occasionally stoop, kneel, crouch,
> ///

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

>crawl, balance, and climb ramps and stairs, but he must never climb ladders, ropes, or scaffolds.

(AR 13.)

At **step four**, the ALJ found that Plaintiff had no past relevant work. (AR 17.) At **step five**, based on Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 17-18.) Accordingly, the ALJ found that Plaintiff was not disabled. (AR 18.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882

3

("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff contends that the ALJ: (1) failed to properly consider the opinion of consultative examiner Vincente Bernabe, D.O., and to properly develop the record; and (2) failed to properly consider whether Plaintiff meets or equals Listing 1.03. (Memorandum in Support of Plaintiff's Complaint ("Pl. Memo.") at 2-10, Dkt. No. 17.) The Commissioner contends that the ALJ: (1) properly gave less weight to Dr. Bernabe's opinion; and (2) properly determined that Plaintiff did not meet or equal a listing. (Memorandum in Support of Defendant's Answer ("Def. Memo.") at 5-15, Dkt. No. 20.) For the reasons below, the Court agrees with the Commissioner.

### A. The ALJ Properly Considered Dr. Bernabe's Opinions

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, "for implicitly rejecting [Dr. Bernabe's] opinion that Plaintiff should never walk on uneven terrain in his 2012 examination." (Pl. Memo. at 3.) The Commissioner argues that the ALJ did, in fact, give "specific and legitimate reasons for rejecting Dr. Bernabe's opinion…." (Def. Memo. at 6.)

#### 1. Dr. Bernabe's Opinions

Dr. Bernabe examined Plaintiff on two occasions and submitted three reports. Dr. Bernabe first examined Plaintiff on April 24, 2012. (AR 258.) In his resulting report, Dr. Bernabe began by noting the medical records he reviewed as part of his examination and briefly summarizing Plaintiff's medical history. (AR 258-59.) Dr. Bernabe then proceeded to summarize his examination findings. (*See* AR 259-62.)

Dr. Bernabe noted that Plaintiff could move around using a single point cane with his left hand. (AR 260.) While Plaintiff's cervical spine, shoulders, elbows,

wrists, hands, ankles, and feet exhibited no abnormalities, Dr. Bernabe noted some "tender[ness] to palpitation along the greater trochanter area of the right hip," but no range of motion issues. (*See* AR 260-61.) However, both tenderness *and* range of motion issues were noted with regard to Plaintiff's lumbosacral spine. (AR 260.)

Dr. Bernabe found no tenderness or effusion in Plaintiff's left knee and noted that it was "stable." (*Id.*) Testing on Plaintiff's left knee was normal, and ranges of motion were within normal limits. (AR 261.) Plaintiff's surgically repaired right knee was comparatively less stable. Dr. Bernabe noted, *inter alia*, various flexion, extension, and range of motion issues and an "actual mechanical block[;]" effusion, swelling, tenderness, and warmness to the touch; and anterior instability. (*Id.*) As to motor strength, Dr. Bernabe noted that Plaintiff had some weakness in his knee extensors and flexor, but found "[n]ormal muscle bulk and tone." (*Id.*) Moreover, no atrophy was found in Plaintiff's right leg. (*See* AR 259.)

Regarding Plaintiff's coordination and gait, Dr. Bernabe noted as follows:

> The claimant walks with a significant antalgic limp. He is unable to completely extend the right leg when he walks. He favors the right leg. He is unable to walk on toes and walk on heels. He applies significant pressure to the cane when he ambulates. He had difficulty getting in and out of the chair and the examination table without help.

(AR 261.) Presumably in light of the foregoing summary, Dr. Bernabe opined that "[a] cane is needed for balance and support for all ambulation." (*Id.*)

Dr. Bernabe diagnosed severe right knee arthrofibrosis status post failed total knee arthroplasty; greater trochanteric bursitis, right hip; degenerative disc disease, lumbar spine; and musculoligamentous strain of the lumbosacral spine. (AR 261-62.) Based on the history he obtained and his examination findings, Dr. Bernabe opined that Plaintiff would be able to push and pull occasionally; lift and carry 20 pounds occasionally and 10 pounds frequently; walk and stand two hours out of an eight-hour workday; sit six hours out of an eight-hour workday; bend, kneel, stoop,

crawl, and crouch occasionally; and never perform agility-based activities such as walking on uneven terrain, climbing ladders, or working with heights. (AR 262.)

On July 26, 2012, after reviewing a radiographic report of an x-ray taken of Plaintiff's right knee on July 17, 2012, that showed relatively normal findings, Dr. Bernabe submitted an "Addendum Report." (AR 266.) In that report, Dr. Bernabe opined, in part, that Plaintiff can push, pull, lift, and carry 50 pounds occasionally and 20 pounds frequently; walk and stand six hours out of an eight-hour workday; sit six hours out of an eight-hour workday; needs a cane for balance and support during prolonged ambulation; can bend, kneel, stoop, crawl, and crouch frequently; and can never walk on uneven terrain, climb ladders, or work with heights. (*Id.*)

Dr. Bernabe conducted another examination of Plaintiff on January 28, 2013. (AR 276.) After again summarizing Plaintiff's medical history, and mentioning the examination Terrance P. Flanagan, M.D., conducted on August 15, 2012, *see infra*, Dr. Bernabe summarized his examination findings. Dr. Bernabe noted that Plaintiff moved in and out of the office and examination room with a single-point cane and favored his right side, but was "able to walk unassisted without a cane." (AR 278.) Plaintiff was also able to toe and heel walk, but could not squat. (*Id.*)

Dr. Bernabe further noted tenderness and less than normal range of motion in the lumbosacral region of Plaintiff's spine. (*Id.*) However, range of motion was normal in all other joints except for Plaintiff's knees. (AR 279.) As for Plaintiff's knees, Dr. Bernabe noted patellofemoral grinding in the left knee, and tenderness and arthrofibrosis in the right knee. (*Id.*) Dr. Bernabe noted no evidence of atrophy and also found that "[m]otor strength is grossly within normal limits[.]" (AR 280.)

Dr. Bernabe diagnosed arthrofibrosis right knee, status post right total knee replacement, chondromalacia patella left knee, and lumbar musculoligamentous strain. (*Id.*) Based on his examination, Dr. Bernabe opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; walk and stand six hours out of an eight-hour workday; sit six hours out of an eight-hour workday;

6

push and pull and perform postural and agility-based movements occasionally; and did not medically need to use an assistive device. (AR 280-81.)

### 2. Dr. Flanagan's Opinion

Between Dr. Bernabe's evaluations, Plaintiff was evaluated by Dr. Flanagan, who submitted a summary report of his evaluation on August 15, 2012. (AR 267-72.) Like Dr. Bernabe, Dr. Flanagan first summarized Plaintiff's medical history and also noted the medical records he reviewed as part of his evaluation. (AR 267-68.) Dr. Flanagan then summarized his examination findings. (AR 269-71.)

Regarding Plaintiff's station and gait, Dr. Flanagan noted, *inter alia*, that he stood with all his weight over his left knee, but was able to rise from his chair with minimal difficulty and get on and off the examining table with no difficulty. (AR 269.) Plaintiff's gait was slightly antalgic on the left and he was unable to walk on tiptoes and heels, despite no evidence of ankle weakness, but he walked across the examination room with only mild difficulty utilizing a single-point cane. (*Id*.)

Like Dr. Bernabe, Dr. Flanagan noted that Plaintiff had a full range of motion and no abnormalities in his neck, shoulders, elbows, wrists, hands, hips, and ankles. (AR 269-70.) Unlike Dr. Bernabe, Dr. Flanagan noted no range of motion issues or tenderness in Plaintiff's back. (AR 269.) Dr. Flanagan noted no range of motion issues in Plaintiff's left knee—although he did note that the range of motion testing resulted in some pain—but some range of motion issues in Plaintiff's right knee, as well as "diffuse palpatory tenderness over the right knee." (AR 270.) No atrophy was found and Plaintiff's motor strength was "grossly within normal limits." (*Id*.)

Dr. Flanagan diagnosed sequelae of right total knee arthroplasty, right knee contracture formation, left patellofemoral syndrome, and lumbar degenerative joint disease.[2] (AR 271.) Based on his examination, Dr. Flanagan opined that Plaintiff

---

[2] Dr. Flanagan noted that "[a]lthough the claimant does not specifically complain of lower back pain on examination today, the medical records do suggest that there are degenerative changes based on x-ray." (AR 271.)

7

could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and walk six hours out of an eight-hour workday; sit six hours out of an eight-hour workday; and climb, stoop, kneel, and crouch frequently. (*Id.*) Dr. Flanagan noted no agility-based activity limitations and, like Dr. Bernabe, stated that "[t]he use of an assistive device is not medically necessary." (*Id.*)

### 3. *Pertinent Law*

An ALJ is obligated to consider medical opinions of record, resolve conflicts, and analyze evidence. *Magallanes,* 881 F.2d 747, 750 (9th Cir. 1989); 20 C.F.R. § 416.927(c). Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). When an examining physician's opinion is contradicted by another opinion, the ALJ can reject the examining physician's opinion, in whole or in part, by providing specific and legitimate reasons supported by substantial evidence in the record. *See Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014).

### 4. *Discussion*

The ALJ gave Dr. Bernabe's opinions significant, but not full weight, in part, because Dr. Bernabe "underestimated [Plaintiff's] ability to perform agility-based activities[,]" including walking on uneven terrain. (AR 16.)³ Specifically, the ALJ found that Dr. Bernabe's agility-based activities findings were not supported by the medical evidence, including the benign clinical and diagnostic findings. (*Id.*) That

---

³ Plaintiff contends that "the ALJ did not expressly state whether he accepted or rejected Dr. Bernabe's opinion that Plaintiff should never walk on uneven terrain." (Pl. Memo. at 3.) Plaintiff is incorrect. The ALJ rejected Dr. Bernabe's assessment of Plaintiff's ability to perform agility-based activities, which *Dr. Bernabe* defined in his opinion as "*walking on uneven terrain*, climbing ladders, working with heights[.]" (AR 16, 262 (emphasis added).) Therefore, in rejecting Dr. Bernabe's agility-based activities assessment, the ALJ also rejected Dr. Bernabe's assessment with regard to Plaintiff's ability to walk on uneven terrain.

is a specific and legitimate reason to discount Dr. Bernabe's assessment. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (an ALJ need not accept a physician's opinion if that opinion is inadequately supported by clinical findings).

The ALJ's finding is also supported by substantial evidence in the record. As noted above, the objective medical evidence obtained around the period of time that Drs. Bernabe and Flanagan examined Plaintiff was relatively benign. So much so, in fact, that when Dr. Bernabe received the July 17, 2012, radiographic report of an x-ray of Plaintiff's right knee, he amended his limitations assessment—increasing the amount of weight that Plaintiff could push, pull, lift, and carry, the amount of time that Plaintiff could stand and walk, and the frequency at which Plaintiff could perform postural activities; and finding that Plaintiff needed to use a cane only for balance and support during *prolonged* ambulation. In Dr. Bernabe's original report, he opined that Plaintiff needed a cane for balance and support for *all* ambulation.

Dr. Flanagan's examination notes and overall opinion also support the ALJ's agility-based activities finding. As noted above, Dr. Flanagan noted, *inter alia*, that Plaintiff was able to rise from his chair with minimal difficulty and get on and off the examining table with no difficulty. Dr. Flanagan further noted that Plaintiff was able to walk across the examination room with only mild difficulty while using his single-point cane. To be sure, Dr. Flanagan noted a number of seemingly contrary findings, including range of motion issues and tenderness in Plaintiff's right knee. However, Dr. Flanagan found no atrophy and noted that Plaintiff's motor strength was "within normal limits." Dr. Flanagan further noted no limitations as to agility-based activities and found that use of an assistive device is not medically necessary.

Finally, in addition to the modified findings mentioned above, Dr. Bernabe's opinions after his second examination evolved, and/or Plaintiff's physical condition improved, in ways that further support the ALJ's finding. For example, whereas in April 2012 Dr. Bernabe noted that Plaintiff could move using a single point cane, in January 2013, Dr. Bernabe noted that Plaintiff could walk unassisted. Whereas in

9

April 2012 Dr. Bernabe noted some weakness in Plaintiff's right knee, in January 2013, Dr. Bernabe found that Plaintiff's motor strength was grossly within normal limits. And whereas in April 2012, and again in July 2012, Dr. Bernabe opined that Plaintiff should never perform agility-based activities, in January 2013, Dr. Bernabe opined that Plaintiff could occasionally perform such activities.

In sum, the Court concludes that the ALJ's reason for rejecting Dr. Bernabe's agility-based activities assessment is a specific and legitimate reason, supported by substantial evidence in the record, and must therefore be upheld by this Court.

### B. The ALJ Did Not Have a Duty to Further Develop the Record

Plaintiff next contends that by not recontacting Dr. Bernabe and Dr. Flanagan concerning various conflicts in their opinions, the ALJ violated his duty to fully and fairly develop the record in this matter. (*See* Pl. Memo. at 3-5.) The Commissioner contends that Plaintiff has plainly "failed to demonstrate that the ALJ had a duty to further develop the record in this regard." (*See* Def. Memo. at 9-10.)

ALJs generally have a duty to further develop the record only if the evidence is ambiguous or inadequate to allow them to make a decision. *See Mayes,* 276 F.3d at 459–60. Similarly, an "ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citations omitted).

Here, Plaintiff does not argue that either doctor's opinion is ambiguous. And the ALJ—supported by the record, as discussed above—found that the evidence is adequate to make a decision. Accordingly, the ALJ did not have a duty to recontact the doctors, and did not violate his duty to fully and fairly develop the record.[4]

---

[4] Furthermore, to the extent the Plaintiff contends that the ALJ should have ordered additional testing, the Court notes that, generally, the *claimant* must prove that he or she is disabled by furnishing medical and other evidence that the Social Security Administration can use to reach conclusions about his or her medical impairment. 20 C.F.R. § 416.912. Moreover, the Social Security Administration ordered three orthopedic consultative examinations before making a determination in this matter.

### C. **Plaintiff's Impairments Do Not Meet or Equal Listing 1.03**

Finally, Plaintiff contends: (1) that the evidence of record clearly establishes that he met or equaled the criteria for Listing 1.03; and (2) that "[u]nfortunately, the ALJ did not provide the proper analysis in his decision to support []his [step three] finding or he more than likely would have determined that plaintiff did indeed meet the Listing." (Pl. Memo. at 6.) The Commissioner contends that Plaintiff failed to establish that his impairments meet or equal Listing 1.03. (Def. Memo. at 10-14.)

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity[.]" *Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in original). If a claimant's impairment (or combination of impairments) meets or equals a "listed impairment[], the claimant is conclusively presumed to be disabled. If [it] is not one … conclusively presumed to be disabling, the evaluation proceeds to" step four. *Bowen v. Yuckert,* 482 U.S. 137, 141, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); *see also Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." *Id.* (emphasis in original) (citing 20 C.F.R. § 404.1526).

As an initial matter, contrary to Plaintiff's contentions, the record in this case establishes that Plaintiff *did not* meet the criteria for Listing 1.03. To meet Listing 1.03, a claimant must establish that he or she is unable to ambulate effectively. 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.03. Inability to ambulate effectively is defined as "an *extreme* limitation of the ability to walk; i.e., an impairment(s) that interferes *very seriously* with the individual's ability to independently initiate, sustain, or

complete activities." 20 C.F.R. pt. 404, subpt. P, App. 1, § 1.00.B.2.b.1 (emphasis added). In light of the discussion and analysis set forth above, *see supra* § IV(A), the Court finds that Plaintiff failed to show an extreme or very serious limitation in his ability to ambulate within the meaning set forth in the regulations.

Plaintiff's equivalency argument fails for three reasons. First, aside from Plaintiff's counsel's passing reference to Listing 1.02(A)—major dysfunction of a joint with involvement of one major peripheral weight-bearing joint, resulting in inability to ambulate effectively—in his opening statement at the hearing, it does not appear that Plaintiff made any concerted effort to present evidence establishing equivalence. (*See, e.g.,* AR 24-53.) Failure to do so is fatal to a claim that the ALJ erred in analyzing equivalency at step three. *See Burch*, 400 F.3d at 679.

Second, given the discussion and analysis set forth above, *see supra* § IV(A), and elsewhere within the ALJ's decision, Plaintiff quite simply has not established symptoms, signs and/or laboratory findings at least equal in severity and duration to the characteristics of a listed impairment—whether it be Listing 1.03 or another of the impairments listed in the regulations. *See Tackett,* 180 F.3d at 1099. The mere presence of multiple impairments, even multiple severe impairments, is insufficient alone to establish equivalency. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan,* 493 U.S. at 532). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id*.

Third, Plaintiff's claim that the Court should remand for an award of benefits or further proceedings because the ALJ did not properly explain his determination that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment (and specifically Listing 1.03), also fails.

///

In support of his argument, Plaintiff cites to *Marcia v. Sullivan*, 900 F.2d 172 (9th Cir. 1990), for the proposition that "in determining whether a claimant equals a listing under step three of the … disability evaluation process, the ALJ must explain adequately his evaluation of … the combined effects of the impairments." *Id*. at 176; *see also* Pl. Memo. at 8-9. In doing so, presumably, Plaintiff contends that the ALJ's cursory analysis within the step three section of his hearing decision, which Plaintiff references at the outset of his listing argument (*see* Pl. Memo. at 5), was insufficient. In that section, the ALJ states as follows:

> The undersigned considered the claimant's impairments under the Listings. The claimant's impairments, considered singly and in combination, do not meet or medically equal the criteria of any medical listing. No treating or examining physician has recorded findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment.

(AR 12-13.)

However, as the Commissioner rightly notes, though boilerplate findings are insufficient to support a conclusion that a claimant's impairment(s) do not meet or equal a listing, the Ninth Circuit has clarified that "*Marcia* simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001). A cursory step three analysis may therefore be cured by a proper discussion and evidentiary evaluation elsewhere in the ALJ's decision. Here, the ALJ devoted at least three pages to the discussion and evaluation of the evidence that supports his conclusions. (*See* AR 14-17.) The Court finds that the ALJ's evaluation of the evidence is sufficient to support his step three conclusion.

In sum, the Court concludes that the ALJ supported his findings of fact with substantial evidence and applied the proper legal standards. Accordingly, the Court must uphold the ALJ's decision.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 26, 2015

/s/ Rozella A. Oliver
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**